# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS

```
* * * * * * * * * * * * * * * * * * *
ANGELA M. ANDRICKS,         *
                            *
            Petitioner,     *   No. 17-1284V
                            *   Special Master Christian J. Moran
v.                          *
                            *
SECRETARY OF HEALTH         *   Filed: October 14, 2020
AND HUMAN SERVICES,         *
                            *   Onset of shoulder pain, fact ruling
            Respondent.     *
* * * * * * * * * * * * * * * * * * *
```

Kevin A. Mack, Law Office of Kevin A. Mack, Tiffin, OH, for petitioner;
Dhairya D. Jani, United States Dep't of Justice, Washington, DC, for respondent.

### TENTATIVE FINDINGS OF FACT

A one-day hearing was held remotely via videoconferencing, on October 8, 2020. At the hearing, testimony was taken from petitioner, Ms. Angela Andricks, and three witnesses, Ms. Angela Sheets, Mr. Michael Andricks, and Ms. Ellen Simonis. All witnesses appeared remotely via videoconferencing. At the end of the hearing, the undersigned tentatively found that: (1) Ms. Andricks has met her evidentiary burden of establishing that her shoulder pain started within 48 hours of receiving her influenza ("flu") vaccine on September 21, 2016; (2) that Ms. Andricks's flu vaccine was administered in the proper location in her left arm; and (3) the pain ratings provided on a scale of 1-10 as part of Ms. Andricks's, Mr. Andricks's, and Ms. Simonis's testimonies were inaccurate. For the purposes of the record, the bases for these tentative findings are briefly reviewed below.[1]

\* \* \*

Petitioners are required to establish the elements of their case by a preponderance of the evidence. 42 U.S.C. § 300aa–13(1)(a). The preponderance of the evidence standard requires a "trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the judge of the fact's existence." Moberly v. Sec'y of Health & Human Servs., 592 F.3d 1315, 1322 n.2 (Fed. Cir. 2010) (citations omitted). Here, the Secretary contested Ms. Andricks's claims that (1) the onset of her shoulder pain occurred within 48 hours of the administration of her vaccine, and (2) that Ms. Sheets, the vaccine administrator, administered the vaccine in an improper location on Ms.

---

[1] The undersigned is entering a tentative ruling in the case either party wants to submit additional documentary evidence while Ms. Andricks's claim is pending.

Andricks's left arm.  See Resp't's Br., filed Mar. 2, 2020, at 3-5.  Accordingly, the undersigned evaluated whether the existence of onset within 48 hours, and whether an inappropriate location for the administration of the vaccine, were more probable than not.  The undersigned additionally made a finding of fact with respect to the pain ratings presented by Ms. Andricks and her witnesses throughout the hearing.

The process for finding facts in the Vaccine Program generally begins with analyzing the medical records, which are required to be filed with the petition.  42 U.S.C. § 300aa–11(c)(2).  As a matter of practice, when making findings of facts the undersigned gives substantial weight to records, such as medical records, that are created contemporaneously with the events they describe.  Appellate courts have recognized that fact-finders are well-within their discretion when choosing to give significant weight to contemporaneously created records.  See, e.g., Cucuras v. Sec'y of Health & Human Servs., 993 F.2d 1525, 1528 (Fed. Cir. 1993).  Of course, the presence or absence of medical records is not dispositive or binding on the outcome.  Instead, the undersigned is tasked with evaluating the entirety of the evidence in the record and determining, based on that evidence, which facts are more likely to be true than not.

*   *   *

**Onset of Shoulder Pain**

Ms. Andricks claims that the onset of her shoulder pain occurred immediately following her vaccination at Rite Aid on September 21, 2016.  Pet'r's Br. at 1; exhibit 5 at 1, ¶ 1.  In support of this contention, Ms. Andricks pointed to phone records which documented her calls to Rite Aid on October 4, 2016; October 7, 2016; and November 17, 2016.  Pet'r's Br. at 1.  The Secretary argues that the record is imprecise and inconsistent regarding the exact time frame in which Ms. Andricks began experiencing pain in her left arm.  Resp't's Br. at 4.  Specifically, the Secretary points to inconsistencies between Ms. Andricks's testimony claiming immediate pain, and phone records and testimony from Mr. Andricks, both of which show that Ms. Andricks did not call Rite Aid to complain of shoulder pain until more than 48 hours after her vaccination.  Id.

As a preliminary matter, the undersigned notes that Ms. Andricks presented relatively poor hearing testimony overall.  In relaying her medical history, including the circumstances surrounding her vaccination, her memory proved unreliable.  She often had trouble remembering dates and occurrences that took place following her vaccination and, when she did relay specific information, it was almost always after her counsel refreshed her recollection with a medical record or other relevant document.  Both Mr. Andricks and Ms. Simonis testified that Ms. Andricks often does not remember dates and sequence of events, in part due to her learning disability.  However, the despite the unreliability of Ms. Andricks's hearing testimony, her phone records and medical records, which were corroborated at the hearing, support a finding that she began experiencing arm pain within 48 hours after receiving the flu shot on September 21, 2016.

First, Mr. Andricks presented phone records at the hearing which showed calls to Rite Aid on October 4, 2016; October 7, 2016; and November 17, 2016.  These were confirmed by Ms. Sheets, who identified the number listed in the phone records for these calls as the number for Rite Aid.  There was no other evidence or challenge provided that would attribute these calls to any purpose other than follow-up after Ms. Andricks's vaccination.  Though these records do not support that Ms. Andricks called Rite Aid within 48 hours of vaccination, Mr. Andricks, whose testimony the undersigned credits, testified that Ms. Andricks began complaining of pain

immediately following the vaccination and made those calls to complain of ongoing pain since the flu shot.

Second, and perhaps most notably, the VAERS report created by Ms. Sheets as a result of Ms. Andricks's November 17, 2016 phone call notes: "Patient contacted us on 11-17-16 to inform us she is <u>still</u> having soreness/painful arm after receiving the flu vaccine." Exhibit 21 at 2 (emphasis added). Ms. Sheets confirmed that the inclusion of the word "still" in this note indicates that Ms. Andricks complained on November 17, 2016, of arm soreness and pain occurring since her flu vaccination. Ms. Sheets also confirmed that it would have been against procedure for a Rite Aid employee to create records from the first two calls because they were too close in time to the vaccination. Ms. Sheets noted that people often experience some temporary soreness or pain following a vaccination and that any calls made to Rite Aid within the first couple of weeks following vaccination would not always result in a written record.

Finally, the notes from Ms. Andricks's first emergency room visit on November 18, 2016, further corroborate the claim that her ongoing arm pain began immediately following her vaccination. The note from Dr. Justin M. Pollock reads: "[Patient] states that she thinks she's having an allergic reaction from a flu shot she got a month ago. She has had pain in her arm and tingling in her elbow area. She has had these symptoms ever since the shot." Thus, Ms. Andricks's complaints to Dr. Pollock regarding the onset of her symptoms provide further corroboration that her arm pain began immediately following her vaccination.

Thus, while the undersigned found Ms. Andricks's testimony regarding onset unpersuasive, the combination of information provided through her phone records and medical records, the VAERS report, and corroboration from Ms. Sheets's and Mr. Andricks's testimonies, support the finding that her arm pain began within 48 hours after her vaccination. Accordingly, the undersigned tentatively finds that preponderant evidence exists to conclude that, more likely than not, Ms. Andricks's arm pain started within 48 hours of her vaccination.

**<u>Location of Vaccine Administration</u>**

Ms. Andricks claims that her flu shot was administered in an improper location. Specifically, she alleges that Ms. Sheets administered the shot too low on her upper arm, closer to her elbow than her shoulder. Both Ms. Andricks and Mr. Andricks testified to the location of the shot and the locations represented were inconsistent. When asked, Ms. Andricks indicated on her own arm a spot a few inches above the elbow that appeared also to be closer to her bicep than her deltoid. Mr. Andricks indicated a relatively low spot on the upper arm, but still clearly on the deltoid and higher than the spot indicated by Ms. Andricks.

The undersigned finds that the shot was administered properly with respect to location based primarily on the testimony of Ms. Sheets. The undersigned found Ms. Sheets to be a credible and persuasive witness who communicated competency and professionalism. Ms. Sheets explained in detail her long history of administering "thousands" of vaccinations over her years as a pharmacist, as well as the training and procedure involved in administering vaccines. Based on this testimony, it is highly unlikely that Ms. Sheets would have administered Ms. Andricks's flu shot so low on her upper arm.

Thus, Ms. Sheet's persuasive testimony combined with the inconsistencies in Ms. Andricks's and Mr. Andricks's testimonies regarding the precise location of the injection, support a finding that Ms. Sheets administered the flu shot properly. Accordingly, the undersigned tentatively finds that preponderant evidence exists to conclude that, more likely than not, Ms. Andricks's flu vaccine was administered in the proper arm location.

**Inaccuracy of Pain Ratings**

At various points throughout their testimony, Ms. Andricks, Mr. Andricks, and Ms. Simonis were asked to describe the level of Ms. Andricks's arm pain using a scale of 1-10, with 1 being hardly any pain and 10 being most painful. Ms. Andricks's testimony regarding her pain using this scale fluctuated widely. She reported her immediate pain as being a 10/10. For the months following vaccination and into 2017, Ms. Andricks stated various pain ratings, at times saying her pain at a given time was "5 to 10," representing a large range in pain rating. Additionally, Mr. Andricks's and Ms. Simonis's accounts of Ms. Andricks's pain based on her complaints were both inconsistent with each other, as well as being inconsistent with Ms. Andricks's testimony.

The undersigned acknowledges that inconsistent testimony regarding pain ratings may be more reasonable for witnesses who did not personally experience the pain and are thus relying on their subjective interpretations of second-hand complaint and affect. However, the combination of these inconsistent testimonies with Ms. Andricks's own inconsistencies and wide fluctuations regarding pain ratings within her own testimony make this evidence unreliable and likely inaccurate. Therefore, the undersigned does not credit these pieces of testimony.

\*     \*     \*

Ultimately, the undersigned has reviewed all the medical records and the testimony provided by Ms. Andricks and her witnesses. Accordingly, the undersigned tentatively finds that preponderant evidence exists to conclude that, more likely than not: (1) Ms. Andricks's shoulder pain started within 48 hours of her vaccination; (2) Ms. Sheets administered the flu vaccine in the proper arm location; and (3) the testimony given regarding pain ratings is inaccurate and unreliable.

Accordingly, a status conference will be held on **Thursday, November 12, 2020, at 11:30 A.M. Eastern Time** to discuss the next steps. Respondent should be prepared to discuss whether (1) any evidence prevents the undersigned from entering a formal ruling finding entitlement to compensation and (2) whether the government would consider resolving this case informally.

Any questions may be directed to my law clerk, Haley Hawkins, at (202) 357-6360.

**IT IS SO ORDERED.**

s/ Christian J. Moran
Christian J. Moran
Special Master